# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIA MARIE-MITCHELL SKINNER,

        Defendant-Appellant.

FOR PUBLICATION
August 20, 2015
9:05 a.m.

No. 317892
St. Clair Circuit Court
LC No. 10-002936-FC

Before: HOEKSTRA, P.J., and SAWYER and BORRELLO, JJ.

BORRELLO, J.

This case presents a constitutional issue of first impression as to whether the Sixth Amendment mandates that a jury make the findings set forth by *Miller v Alabama*, 576 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012) as codified in MCL 769.25(6), before sentencing a juvenile homicide offender to life imprisonment without the possibility of parole. We find that the Sixth Amendment mandates that juveniles convicted of homicide who face the possibility of a sentence of life without the possibility of parole have a right to have their sentence determined by a jury. In so finding, we expressly reserve the issue of whether *this* defendant should receive the penalty of life in prison without the possibility of parole for a jury. In this case, defendant requested and was denied her right to have a jury decide her sentence. Accordingly, we vacate her sentence for first-degree murder and remand for resentencing on that offense consistent with this opinion.

## I. BACKGROUND

In November 2010, at the age of 17, defendant arranged to have her parents Paul Skinner and Mara Skinner murdered. Specifically,

> The victims, defendant's parents, were viciously attacked in their bed in November 2010. Defendant's father was killed in the attack and defendant's mother suffered roughly 25 stab wounds. An investigation led to Jonathan Kurtz, defendant's boyfriend, and James Preston. The investigation also led to the discovery of a map of the neighborhood and a note containing tips on how to break into defendant's house and commit the murders. Cell phone records revealed text messages between defendant, Kurtz, and Preston that indicated that the crime had been planned by all three. During an interview with police, defendant implicated Preston, then implicated Kurtz and Preston, and then

-1-

admitted that she had talked to Kurtz about killing her parents. Defendant said that Kurtz was going to seek Preston's help. [*People v Skinner*, unpublished opinion per curiam of the Court of Appeals, issued February 21, 2013 (Docket No. 306903) (slip op at 1).]

Defendant was charged in connection with the attacks and, following a trial, a jury convicted her of first-degree premeditated murder, MCL 750.316(1)(a), attempted murder, MCL 750.91, and conspiracy to commit murder, MCL 750.157a. On September 16, 2011, the trial court sentenced defendant to mandatory life without parole for the first-degree murder conviction, and life sentences each for the attempted murder and conspiracy to commit murder convictions. Defendant appealed her convictions and sentences.

While defendant's appeal was pending, on June 25, 2012, the United States Supreme Court decided *Miller*, 576 US at ___, wherein the Court held that mandatory life without parole sentences for juvenile offenders violated the Eighth Amendment. Subsequently, this Court affirmed defendant's convictions and life sentences for attempted murder and conspiracy, but remanded for resentencing on defendant's first-degree murder conviction to consider the factors set forth in *Miller*.[1]

On July 11, 2013, the trial court held a resentencing hearing and again sentenced defendant to life without parole for the first-degree murder conviction. Defendant again appealed her sentence. While defendant's appeal was pending, on March 4, 2014, MCL 769.25 took effect, which was enacted in response to *Miller* and established a framework for imposing a life without parole sentence upon a juvenile convicted of, *inter alia*, first-degree murder. Meanwhile, this Court ordered defendant's appeal held in abeyance pending our Supreme Court's decision in *People v Carp*, 496 Mich 440; 852 NW2d 801 (2014), which concerned the retroactivity of *Miller*. Following the decision in *Carp*, this Court remanded the case to the trial court for a second resentencing—third sentencing—hearing to be conducted in accordance with MCL 769.25; this Court retained jurisdiction.[2]

On second remand, defendant moved to impanel a jury, arguing that a jury should make the factual findings mandated by MCL 769.25(6) at the resentencing hearing. The trial court denied defendant's motion and this Court denied defendant's emergency application for leave to appeal that order.[3] Thereafter, the trial court held the second resentencing hearing on September 18, September 19, and September 24, 2014, and, after hearing evidence from both defendant and the prosecution, the court again sentenced defendant to life without parole for the first-degree murder conviction. Defendant now appeals that sentence as of right, arguing, *inter alia*, that

---

[1] *People v Skinner*, unpublished opinion per curiam of the Court of Appeals, issued February 21, 2013 (Docket No. 306903).

[2] *People v Skinner*, unpublished order of the Court of Appeals, entered July 30, 2014 (Docket No. 317892).

[3] *People v Skinner*, unpublished order of the Court of Appeals, entered September 17, 2014 (Docket No. 323509).

MCL 769.25 violates her Sixth Amendment right to a jury because it exposes her to a harsher penalty than was otherwise authorized by the jury verdict.

## II. STANDARD OF REVIEW

We review constitutional issues de novo. *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). Issues of statutory construction are also reviewed de novo. *People v Williams*, 483 Mich 226, 232; 769 NW2d 605 (2009).

## III. GOVERNING LAW

This case brings us to the intersection of the Sixth and Eighth Amendments to the United States Constitution. Specifically, the issue before us illustrates, following *Miller*, the interplay between the Eighth Amendment's limitations with respect to sentencing a juvenile to life imprisonment without the possibility of parole and a juvenile's right to a jury trial under the Sixth Amendment. We proceed with a review of the seminal case of *Miller* before discussing *Miller's* impact on Michigan's sentencing scheme; we then review relevant Supreme Court Sixth Amendment jurisprudence before applying that precedent to Michigan's post-*Miller* juvenile sentencing scheme.

### A. MILLER v ALABAMA

*Miller* is part of a line of growth in the Supreme Court's Eighth Amendment jurisprudence relative to juvenile offenders. This precedent, in part, can be traced back to *Thompson v Oklahoma*, 487 US 815; 108 S Ct 2687; 101 L Ed 2d 702 (1988), wherein a plurality of the Court held that the Eighth Amendment categorically barred "the execution of any offender under the age of 16 at the time of the crime." *Roper v Simmons*, 543 US 551, 561; 125 S Ct 1183; 161 L Ed 2d 1 (2005), citing *Thompson*, 487 US at 818-838. Subsequently, in *Roper*, 543 US at 551, the Court expanded on the rationale in the *Thompson* plurality and held that the Eighth Amendment categorically barred imposition of the death penalty upon all juveniles under the age of 18 irrespective of the offense. *Id*. at 568-578. The Court reasoned that "[c]apital punishment must be limited to those offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution." *Id*. at 568 (quotation marks and citations omitted). The Court reasoned that, because of the unique differences between juveniles and adults, "juvenile offenders cannot with reliability be classified among the worst offenders." *Id*. at 569. In particular, the Court noted, juveniles exhibit "[a] lack of maturity and underdeveloped sense of responsibility" that "often result[s] in impetuous and ill-considered actions and decisions." *Id*. (quotation marks and citations omitted). Additionally, juveniles "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure," and "the character of a juvenile is not as well formed as that of an adult." *Id*. at 569-570. Thus, "neither retribution nor deterrence provides adequate justification for imposing the death penalty on juvenile offenders. . . ." *Id*. at 572.

Following *Roper*, under the Eighth Amendment the maximum penalty that could be imposed upon a juvenile offender was life imprisonment without the possibility of parole. The Court further limited that form of punishment in *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010), and *Miller*, 576 US at ____. Specifically, in *Graham*, the Court held

that the Eighth Amendment categorically barred a sentence of life without parole for juvenile "nonhomicide offenders." *Graham*, 560 US at 74. The *Graham* Court reasoned that juveniles who "do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment. . . ." *Id.* at 69. The Court explained that, unlike "non-homicide" offenses, homicide is unique with respect to its "moral depravity" and the injury it inflicts upon its victim and the public and concluded, "[i]t follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis." *Id.* at 69. The Court proceeded to establish a bright-line categorical bar on life without parole sentences for juvenile non-homicide offenders. *Id.* at 74. Although a state was not "required to guarantee eventual freedom," juveniles convicted of non-homicide offenses were to be afforded "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75.

Building upon *Roper* and *Graham*, in *Miller*, the Supreme Court held that, irrespective of the offense, *mandatory* life sentences without the possibility of parole for juvenile offenders violated the Eighth Amendment. *Miller*, 132 S Ct at 2460. Given the unique characteristics of juveniles, the Court reasoned, the Eighth Amendment required consideration of an offender's youthfulness during sentencing, something that mandatory sentencing schemes failed to do. *Id.* at 2464-2466. The Court explained:

> Most fundamentally, *Graham* insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole. In the circumstances there, juvenile status precluded a life-without-parole sentence, even though an adult could receive it for a similar crime. And in other contexts as well, the characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate . . . An offender's age, we made clear in *Graham*, is relevant to the Eighth Amendment, and so criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed. [*Id.* at 2465-2466 (internal quotation marks and citations omitted).]

Drawing from capital punishment cases, the Supreme Court reasoned that life without parole sentences were analogous to capital punishment for juveniles and, therefore, the Eighth Amendment mandated individualized sentencing for this particularly harsh form of punishment. *Id.* at 2466-2467. The *Miller* Court referenced *Woodson v North Carolina*, 428 US 280; 96 S Ct 2987; 49 L Ed 2d 944 (1976), wherein the Supreme Court struck down a mandatory death sentencing scheme because the scheme "gave no significance to the character and record of the individual offender or the circumstances of the offense, and exclude[ed] from consideration . . . the possibility of compassionate or mitigating factors." *Miller*, 132 S Ct at 2467 (quotation marks and citations omitted). Additionally, the Supreme Court noted that:

> Subsequent decisions have elaborated on the requirement that capital defendants have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors, so that the death penalty is reserved only for the most culpable defendants committing the most serious offenses. [*Id.* (citations omitted).]

In the context of juveniles, the Supreme Court's individualized sentencing jurisprudence illustrated the importance that "a sentencer have the ability to consider the mitigating qualities of youth," in assessing culpability including, among other things, age, background and mental and emotional development. *Id*. (quotation marks and citations omitted).

The Supreme Court concluded that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id*. at 2469. However, the Supreme Court did not categorically bar life without parole sentences for juveniles convicted of a homicide offense provided that the sentencer take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. (footnote omitted). The Supreme Court cautioned that:

> this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and *the rare juvenile offender whose crime reflects irreparable corruption*.' [*Id*. at 424, quoting *Roper*, 543 US at 573 (emphasis added).]

Thus, after *Miller*, mandatory life without parole sentences for juvenile offenders are unconstitutional in all cases; however, in homicide cases, an individualized life without parole sentence may be imposed where the crime reflects "irreparable corruption." The *Miller* Court did not establish a bright-line test to determine whether a juvenile's crime reflects "irreparable corruption;" instead, "*Miller* discussed a range of factors relevant to a sentencer's determination of whether a particular defendant is a 'rare juvenile offender whose crime reflects irreparable corruption.'" *People v Gutierrez*, 58 Cal 4th 1354, 1388; 171 Cal Rptr 3d 421; 324 P 3d 245 (2014), quoting *Miller*, 132 S Ct at 2469. Those factors were set forth as follows:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys . . . And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. [*Miller*, 132 S Ct at 2469.]

*Miller*, therefore, categorically barred mandatory life without parole sentences for juveniles, but, in doing so, the Supreme Court also set forth a framework for imposing a life without parole sentence when a juvenile's homicide offense reflects "irreparable corruption." That is, the Supreme Court provided factors to be used during sentencing that serve as a

guidepost for determining whether a juvenile's homicide offense reflects "irreparable corruption."

## B. MICHIGAN'S SENTENCING SCHEME POST-MILLER

*Miller* had wide-ranging effect nationwide in that, with respect to juvenile offenders, it invalidated state statutes that imposed mandatory life without parole sentences.[4]  In Michigan, the Legislature enacted 2014 PA 22, codified at MCL 769.25 and MCL 769.25a[5] in response to *Miller*.  Relevant to this case, MCL 769.25 provides in pertinent part:

> (1) This section applies to a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2) []

> \* \* \*

> (2) The prosecuting attorney may file a motion under this section to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of parole if the individual is or was convicted of any of the following violations:

> (b) A violation of . . . [MCL 750.316][6] []

---

[4]  See e.g. Russell, *Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights*, 56 B C L Rev 553, 583 (2015) (noting that, "in the mere two years since *Miller* was decided, the decision has been cited in more than 1000 cases nationwide" and "sixteen state legislatures have enacted statutes in response to *Graham* and *Miller*, and many others are considering bills" (footnotes omitted).

[5]  MCL 769.25a concerns retroactivity of MCL 769.25 and it is not at issue in this case.

[6]  In addition to first-degree murder, MCL 769.25(2) provides that a prosecuting attorney may move for a life without parole sentence for juveniles convicted of several other offenses including MCL 333.17764(7); MCL 750.16(5); MCL 750.18; MCL 750.436(2)(e) and MCL 750.543f.  The issue of whether these offenses constitute "homicide offenses" under *Graham*, 560 US at 48 and *Miller*, 576 US at___, for purposes of sentencing juvenile offenders to life without parole is not before this Court.  See e.g. *Graham*, 560 US at 50 (in categorically barring life-without-parole sentences for juveniles convicted of "non homicide" offenses, the Court noted that "because juveniles have lessened culpability they are less deserving of the most serious forms of punishment . . . Moreover, defendants *who do not kill, intend to kill, or foresee that life will be taken* are categorically less deserving of such punishments than are murderers.") (Emphasis added); see also *Miller*, 132 S Ct at 2475-2476 (BREYER, J., concurring) (stating that "[g]iven *Graham's* reasoning, the kinds of homicide that can subject a juvenile offender to life without parole *must exclude instances where the juvenile himself neither kills nor intends to kill the victim*") (emphasis added).  For purposes of this case, there is no dispute that premeditated first-degree murder, of which defendant was convicted, constitutes a homicide offense that is eligible for life without parole under *Graham* and *Miller*.

* * *

(3) If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described . . . under subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after the effective date of the amendatory act that added this section. The motion shall specify the grounds on which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.

(4) If the prosecuting attorney does not file a motion under subsection (3) within the time periods provided for in that subsection, *the court shall sentence the defendant to a term of years* as provided in subsection (9).

* * *

(6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in Miller v Alabama, 576 US _____; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

(7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

* * *

(9) If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years. [] [Emphasis added.]

This legislation "significantly altered Michigan's sentencing scheme for juvenile offenders convicted of crimes that had previously carried a sentence of life without parole." *Carp*, 496 Mich at 456. Specifically, under this new scheme,

Rather than imposing fixed sentences of life without parole on all defendants convicted of violating MCL 750.316, *MCL 769.25 now establishes a default sentencing range* for individuals who commit first-degree murder before turning 18 years of age. Pursuant to the new law, absent a motion by the prosecutor seeking a sentence of life without parole, *the court shall sentence the individual to a term of imprisonment* for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.

-7-

When, however, the prosecutor does file a motion seeking a life-without-parole sentence, the trial court "shall conduct a hearing on the motion as part of the sentencing process" and "shall consider the factors listed in *Miller v. Alabama*...." MCL 769.25(6). Accordingly, the sentencing of juvenile first-degree-murder offenders now provides for the so-called "individualized sentencing" procedures of *Miller*. [*Id*. at 458-459 (emphasis added) (citations omitted).]

Thus, in response to *Miller*, and as explained in *Carp*, the Michigan Legislature created a default sentence for juvenile defendants convicted of first-degree murder. The default sentence is a term-of-years. See MCL 769.25(4) (providing that, absent the prosecution's motion for a life without parole sentence, "the court *shall sentence the defendant to a term of years* as provided in subsection (9)" (emphasis added)). Alternatively, a life without parole sentence may be imposed if the following framework is adhered to: (1) the prosecution timely files a motion seeking a life without parole sentence, (2) the trial court holds a sentencing hearing, (3) at the hearing, the trial court considers the factors listed in *Miller*, and "may" consider "any other criteria relevant to its decision," (4) the trial court specifies "the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed," and the court "may consider evidence presented at trial *together with any evidence presented at the sentencing hearing*." See MCL 769.25 (emphasis added).

Defendant contends that this sentencing scheme violates her Sixth Amendment right to a jury because it exposes her to a potential life without parole sentence, which is greater than the sentence otherwise authorized by the jury verdict standing alone.

The *Miller* Court did not address the issue of *who* should decide whether a juvenile offender should receive a life without parole sentence and we are unaware of any court that has yet to address the issue. In the final paragraph of its opinion, the Court stated: "*Graham, Roper*, and our individualized sentencing decisions make clear that *a judge or jury* must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 132 S Ct at 2475 (emphasis added). This passing reference to "judge or jury" is not dispositive of the issue. "The Court's decision in *Miller* does not discuss who is empowered to make the sentencing decision that the case involves a 'rare' instance where the juvenile is 'irreparably corrupt' and may be sentenced to life without parole." Russell, *Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights*, 56 BC L Rev 553, 569 (2015). Instead, "*Miller* generally avoids the issue by referencing the 'sentencer' throughout the opinion, rather than specifying a judge or a jury." *Id*. Moreover, "[b]ecause Sixth Amendment jury rights can be waived, *Miller's* reference to the judge as a possible sentencer is hardly dispositive." *Id*. (footnote omitted). Indeed, in declining to address this issue, [7] in *Carp* our Supreme Court noted that, given recent Sixth Amendment jurisprudence,

---

[7] In *Carp*, our Supreme Court noted "[a]s none of the defendants before this Court asserts that his sentence is deficient because it was not the product of a jury determination, we find it unnecessary to further opine on this issue and leave it to another day to determine whether the individualized sentencing procedures required by *Miller* must be performed by a jury in light of

"*Miller's* reference to individualized sentencing being performed by a 'judge or jury' might merely be instructive on the issue but not dispositive." *Carp*, 496 Mich at 491 n 20.

Because *Miller* did not directly address the issue of who decides a life sentence without the possibility of parole, and because there is no case law on point, we turn to the United States Supreme Court's relevant Sixth Amendment jurisprudence for guidance.

### C. SIXTH AMENDMENT RIGHT TO A JURY

In relevant part, the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." US Const, Am VI. The rights afforded under the Sixth Amendment are incorporated to the states by the Due Process Clause of the Fourteenth Amendment. *Presley v Georgia*, 558 US 209, 211-212; 130 S Ct 721; 175 L Ed 2d 675 (2010). "Taken together, these rights indisputably entitle a criminal defendant to a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," *Apprendi v New Jersey*, 530 US 466, 477; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (quotation marks and citation omitted), and are deeply-rooted in our nation's jurisprudence:

> [T]he historical foundation for our recognition of these principles extends down centuries into the common law. 'To guard against a spirit of oppression and tyranny on the part of rulers,' and 'as the great bulwark of [our] civil and political liberties," 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that "*the truth of every accusation*, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours [sic]." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769). [] [*Apprendi*, 530 US at 477.]

Cognizant of this historical backdrop, the United States Supreme Court has recently expanded the scope of a criminal defendant's Sixth Amendment right to a jury in several cases commencing with *Apprendi*, 530 US at 466. In that case, the petitioner pleaded guilty of, *inter alia*, a second-degree weapons offense, which carried a maximum penalty of between 5 and 10 years imprisonment under New Jersey law. *Id*. at 469-470. Thereafter, the prosecutor filed a motion to enhance the petitioner's sentence under a New Jersey "hate crime" statute that permitted a sentencing judge to impose an enhanced sentence of up to 20 years upon a finding that the offender acted "with a purpose to intimidate an individual or group" because of membership in a protected class. *Id*. Following a hearing, the sentencing judge found by a preponderance of the evidence that the petitioner was motivated by racial animus and sentenced him to 12 years' imprisonment, 2 more than the maximum authorized under the law without the enhancement. *Id*. at 471.

---

[*Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." *People v Carp*, 496 Mich 440, 491 n 20; 852 NW2d 801 (2014).

On appeal, the petitioner argued, in part, that the finding of racial animus was required to be proved to a jury beyond a reasonable doubt. *Id*. The Supreme Court agreed, holding that the sentence violated the petitioner's right to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id*. at 477, 490-491 (quotation marks and citation omitted). The Court reasoned that the petitioner's Sixth Amendment jury right attached to both the weapon's offense and the hate crime aggravator because "New Jersey threatened [the petitioner] with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race." *Id*. at 476. "Merely using the label 'sentence enhancement' to describe the latter surely does not provide a principled basis for treating them differently." *Id*. Rather, "[t]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id*. at 494 (footnote omitted). This is because "[o]ther than the fact of a prior conviction, *any fact that increases the penalty for a crime* beyond the prescribed statutory maximum *must be submitted to a jury* and proved beyond a reasonable doubt." *Id*. at 490 (emphasis added).

Two years later, in *Ring*, the Supreme Court applied *Apprendi* to Arizona's death penalty sentencing scheme, which authorized a trial judge to increase a capital defendant's maximum sentence from life imprisonment to death based upon judicially found aggravating factors. *Ring*, 536 US at 588. The Supreme Court concluded that, "in effect, the required finding . . . exposed [the defendant] to a greater punishment than that authorized by the jury's guilty verdict." *Id*. at 604. Thus, the aggravators acted as the "functional equivalent" of elements of a greater offense and were required to be proved to a jury beyond a reasonable doubt. *Id*. at 609. The Court explained that, "'[w]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.'" *Id*. at 605, quoting *Apprendi*, 530 US at 495. The relevant inquiry, the Supreme Court noted, was "not one of form but of effect" and "*[i]f a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact*, *that fact*—no matter how the state labels it—*must be found by a jury beyond a reasonable doubt*." *Id*. at 602 (quotation marks and citations omitted) (emphasis added).[8]

Taken together, *Apprendi* established, and *Ring* reaffirmed that, other than a prior conviction, *any* finding of fact that increases a criminal defendant's maximum sentence must be proved to a jury beyond a reasonable doubt. "In each case, we concluded that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding." *Blakely v Washington*, 542 US 296, 303; 124 S Ct 2531; 159 L Ed 2d 403 (2004). In the years

---

[8] In arriving at its holding, the *Ring* Court overruled, in part, *Walton v Arizona*, 497 US 639; 110 S Ct 3047; 111 L Ed 2d 511 (1990), which had rejected a Sixth Amendment challenge to the same sentencing scheme approximately 12 years earlier. The Court reasoned that *Walton* and *Apprendi* were "irreconcilable," explaining that "[c]apital defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, 536 US at 489.

following, the Supreme Court applied *Apprendi* to invalidate two state sentencing schemes in Washington and California, both of which share similarities with the sentencing scheme at issue in this case.

In *Blakely*, 542 US at 296, the Supreme Court held that Washington's determinate sentencing scheme ran afoul of *Apprendi*. In that case, the petitioner pleaded guilty of, *inter alia*, second-degree kidnapping with a firearm, a class B felony. *Id.* at 299. State law provided that class B felonies in general carried a statutory maximum of 10 years' imprisonment; however, under the state's Sentencing Reform Act, the standard sentencing range for the second-degree kidnapping offense was 49 to 53 months. *Id.* The Reform Act authorized, but did not require, the sentencing judge to make an upward departure from the standard range upon a finding of "substantial and compelling reasons justifying an exceptional sentence." *Id.*, quoting Wash Rev Code Ann § 9.94A.120(2). The act listed non-exhaustive aggravating factors justifying such a departure. *Id.*

Relying on the Reform Act, the sentencing judge departed from the recommended standard sentencing range of 49 to 53 months and sentenced the petitioner to 90 months imprisonment—37 months above the standard range—after finding that the petitioner acted with "deliberate cruelty." *Id.* at 300. The state argued, in part, that there was no *Apprendi* violation because the statutory maximum authorized by law was the general 10-year maximum for class B felonies as opposed to the 49-53 month standard range for second-degree kidnapping. *Id.* at 303. The Supreme Court rejected this argument, explaining that, for purposes of *Apprendi*, the "statutory maximum" is the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 US at 303. The Supreme Court stated:

> In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment . . . and the judge exceeds his proper authority. [*Id.* at 303-304, (quotation marks and citation omitted.)]

The Court also rejected the state's argument that the Reform Act did not violate *Apprendi* because the sentencing judge retained discretion regarding whether to impose an enhanced sentence, explaining:

> The State in *Blakely* had endeavored to distinguish *Apprendi* on the ground that '[u]nder the Washington guidelines, an exceptional sentence is within the court's discretion as a result of a guilty verdict.' . . . We rejected that argument. The judge could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty. Consequently, that fact was subject to the Sixth Amendment's jury-trial guarantee. [*Cunningham v California*, 549 US 270, 283; 127 S Ct 856; 166 L Ed 2d 856 (2007), citing *Blakely*, 542 US at 305 (internal quotation marks and citations omitted).]

The *Blakely* Court concluded that because "the judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea," the sentence ran afoul of the Sixth Amendment. *Blakely*, 542 US at 304.

After deciding *Blakely*, in *Cunningham*, 549 US at 270, the Supreme Court held that California's Determinate Sentencing Law (DSL) violated the Sixth Amendment.[9] In *Cunningham*, the petitioner was convicted of a sex offense. *Id*. at 275. Under the DSL, the offense was punishable by a lower (6 year), middle, (12 year) and upper (16 year) sentence. *Id*. The DSL provided that, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." *Id*. at 277. At a post-trial sentencing hearing, the sentencing judge departed from the 12-year middle term and imposed the upper 16-year term after finding six aggravating circumstances by a preponderance of the evidence. *Id*. at 275-276.

On appeal, the Supreme Court held that the DSL violated the Sixth Amendment, explaining, "[t]his Court has repeatedly held that, under the Sixth Amendment, *any fact that exposes a defendant to a greater potential sentence must be found by a jury*, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Id*. at 281 (emphasis added). The Court concluded that, "[b]ecause the DSL allocates to judges sole authority to find facts permitting the imposing of an upper term sentence, the system violates the Sixth Amendment." *Id*. at 293.

In arriving at its holding, the *Cunningham* Court rejected the California Supreme Court's view that the DSL resembled a permissible "advisory system," explaining:

> Under California's system, judges are not free to exercise their discretion to select a specific sentence within a defined range. [Rather], California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. [The petitioner's] sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies. [*Id*. at 292 (quotation marks and internal citations omitted).]

---

[9] In another case following *Blakely*, the Supreme Court struck down certain provisions of the Federal Sentencing Guidelines on grounds that they violated the Sixth Amendment to the extent that they mandated enhanced sentences based on judicially-found facts. *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). Given that this case does not involve sentencing guidelines, *Booker* is not highly instructive for purposes of our analysis.

The *Cunningham* Court concluded, "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." *Id*. at 293 (footnote omitted).

*Apprendi* and its progeny concerned judicial fact finding in the context of a criminal defendant's maximum sentence. In *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), the Supreme Court applied *Apprendi* in the context of mandatory minimum sentences. In *Alleyne*, a jury convicted the petitioner of a federal robbery offense. *Id*. at 2155-2156. The sentencing judge increased the petitioner's mandatory minimum sentence from five to seven years after finding that the petitioner brandished a weapon during commission of the robbery. *Id*. at 2156. The petitioner argued that the jury did not determine that he brandished a weapon and therefore he was not subject to the higher sentence. *Id*. The Supreme Court agreed, rejecting the previous distinction it had drawn in *Harris v United States*, 536 US 545; 122 S Ct 2406; 153 L Ed 2d 524 (2002)—one that distinguished between "facts that increase the statutory maximum and facts that increase only the mandatory minimum." *Alleyne*, 133 S Ct at 2155. Instead, the *Alleyne* Court explained that "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." *Id*. at 2158. And "a fact is by definition an element of the offense and must be submitted to the jury *if it increases the punishment above what is otherwise legally prescribed*." *Id*. (emphasis added). This definition of "elements" "necessarily includes not only facts that increase the ceiling, but also those that increase the floor." *Id*. The Supreme Court concluded:

> [T]he essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. [*Id*. at 2162.]

*Apprendi* through *Alleyne* represent a line of growth in the Supreme Court's Sixth Amendment jurisprudence concerning the scope of a criminal defendant's right to a jury. This jurisprudence can be summarized as follows: other than a prior conviction, *any fact* that increases either the floor or the ceiling of a criminal defendant's sentence beyond that which "a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by defendant," must be submitted to a jury and proved beyond a reasonable doubt. *Blakely*, 542 US at 296; see also *Apprendi*, 530 US at 466; *Ring*, 536 US at 584; *Cunningham*, 549 US at 270; *Alleyne*, 133 S Ct at 2155. We proceed by applying this jurisprudence to the sentencing scheme at issue in this case.

## IV. APPLICATION

### A. *MCL 769.25 VIOLATES THE SIXTH AMENDMENT*

Our application of the Supreme Court's Sixth Amendment jurisprudence begins with a determination of whether the findings mandated by MCL 750.25 constitute elements of the offense. *Alleyne*, 133 S Ct at 2162. To answer that question, we must determine if the findings "alter[] the legally prescribed punishment so as to aggravate it," if so, the findings "necessarily

form[] a constituent part of a new offense and must be submitted to the jury" and proved beyond a reasonable doubt. *Id*.

In this case, following the jury's verdict and absent a prosecution motion seeking a life without parole sentence followed by additional findings by the trial court, the legally prescribed maximum punishment that defendant faced for her first-degree murder conviction was imprisonment for a term-of-years. Specifically, MCL 750.316 provides in relevant part as follows:

> (1) *Except as provided in . . .* [MCL 769.25 and 769.25a], a person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life without eligibility for parole:
>
> (a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing. [Emphasis added.]

The phrase "[e]xcept as provided in" means that punishment for first-degree murder is contingent on the provisions of MCL 769.25. As noted above, MCL 769.25 contains provisions that establish a default term-of-years prison sentence for a juvenile convicted of first-degree murder. Specifically, the statute provides in pertinent part that "[t]he prosecuting attorney may file a motion under this section to sentence a [] [juvenile defendant] to imprisonment for life without the possibility of parole if the individual is or was convicted of [] [first-degree murder.]" MCL 769.25(2). Absent this motion, "the court *shall sentence the defendant to a term of years. . . .*" MCL 769.25(4) (emphasis added). The effect of this sentencing scheme clearly establishes a "default" term-of-years sentence for juvenile defendants convicted of first-degree murder. See *Carp*, 496 Mich at 458 (explaining that "MCL 769.25 now *establishes a default sentencing range* for individuals who commit first-degree murder before turning 18 years of age" (emphasis added);[10] MCL 769.25(4) (providing that, absent the prosecution's motion to impose a life without parole sentence, "*the court shall sentence the defendant to a term of years* as provided in subsection (9)" (emphasis added)).[11]

Stated differently, at the point of conviction, absent a motion by the prosecution and without additional findings on the *Miller* factors, the maximum punishment that a trial court may

---

[10] Our dissenting colleague erroneously contends that we "conflate" the language in *Carp*. *Post* at 10-11. To the contrary, Justice MARKMAN, writing for the majority in *Carp*, described MCL 769.25 as follows: "[r]ather than imposing fixed sentences of life without parole on all defendants convicted of violating MCL 750.316, MCL 769.25 now *establishes a default sentencing range* for individuals who commit first-degree murder before turning 18 years of age." *Carp*, 496 Mich at 458 (emphasis added). The dissent fails to articulate what part of this language we "conflate."

[11] MCL 769.25(9) governs a term-of-years sentence for juvenile defendants and it requires a sentencing court to impose "a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years."

impose upon a juvenile convicted of first-degree murder is a term-of-years prison sentence. See *Blakely*, 542 US at 303 (holding that for purposes of *Apprendi*, the "statutory maximum" "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.") Thus, following her jury conviction, defendant was subject to a term-of-years prison sentence. Once the prosecuting attorney filed a motion to impose a life-without-parole sentence, defendant was exposed to a potentially harsher penalty contingent on findings made by the trial court. This violated defendant's right to "a jury determination that [she] is guilty of every element of the crime with which [she] is charged, beyond a reasonable doubt," *Apprendi*, 530 US at 477 (quotation marks and citation omitted) because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id*. at 490.

The state conditioned defendant's life without parole sentence on two things: (1) the prosecution's filing of a motion to impose the sentence, and (2) the trial court's findings with respect to the *Miller* factors and "any other criteria relevant to its decision." This scheme authorized the trial court to enhance defendant's sentence from a term-of-years to life without parole based on findings made by a judge not a jury. As such, the sentencing scheme is akin to the schemes at issue in *Apprendi*, *Ring*, *Blakely* and *Cunningham*. Each of those cases involved a sentencing scheme that authorized a judge to enhance a defendant's maximum sentence based solely upon judicial fact-finding. The Supreme Court found these schemes unconstitutional, explaining, "[t]his Court has repeatedly held that, under the Sixth Amendment, *any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge. . . .*" *Cunningham*, 549 US at 281 (emphasis added). Similarly, the sentencing scheme in this case cannot stand when examined under the lens of the Supreme Court's Sixth Amendment jurisprudence.

Clearly, the findings mandated by MCL 769.25(6) "exposed [defendant] to a greater punishment than that authorized by the jury's guilty verdict;" the findings therefore acted as the "functional equivalent" of elements of a greater offense that were required to be proved to a jury beyond a reasonable doubt. *Ring*, 536 US at 604. Enhanced punishment under MCL 769.25 is not based merely on defendant's prior convictions, on facts admitted by defendant, or on facts that are part and parcel to the elements that were submitted to the jury during the guilt-phase of the proceeding Rather, like in *Apprendi*, 530 US at 476, in this case, the state threatened defendant with certain pains—i.e. a term of years sentence—following her jury conviction of first-degree murder and with additional pains—i.e. life without parole—following additional findings by the trial court. "Merely using the label 'sentence enhancement' to describe the latter surely does not provide a principled basis for treating them differently." *Id*. The effect of MCL 769.25 plainly subjects defendant to harsher punishment based on judicially found facts in contravention of the Sixth Amendment.

We note that MCL 769.25 is unique to Michigan's sentencing scheme such that our Supreme Court's recent decision in *People v Lockridge*, ___Mich___; ___NW2d___ (2015) (Docket No. 149073), while not directly on point, lends support to our conclusion that a defendant's maximum sentence cannot be increased based on judicial fact finding. In *Lockridge*, in relevant part, our Supreme Court was tasked with addressing whether, for purposes of *Alleyne*, "a judge's determination of the appropriate sentencing guidelines range . . . establishes a

-15-

'mandatory minimum sentence,' such that the facts used to score the offense variables must be admitted by the defendant or established beyond a reasonable doubt to the trier of fact. . . ." Slip op. at 5-6 n 11. The *Lockridge* Court answered this question in the affirmative, holding that Michigan's sentencing guidelines were constitutionally deficient under *Apprendi* as extended by *Alleyne*. *Id*. at 1-2. The deficiency was "the extent to which the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." *Id*.

As a remedy, the *Lockridge* Court severed MCL 769.34(2) "to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory," and struck down the requirement in MCL 769.34(3) "that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 2. Going forward, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence," however, "a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only and . . . sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*.

*Lockridge* concerned the constitutionality of Michigan's sentencing guidelines—guidelines that govern a defendant's mandatory-minimum sentence. Importantly, however, the *Lockridge* Court addressed the constitutionality of the guidelines with the understanding that a defendant's *maximum* sentence is fixed by law and not affected by the guidelines. See Slip op. at 15 (noting that "scoring the sentencing guidelines and establishing the guidelines minimum sentence range does not alter the maximum sentence.") In contrast, this case concerns enhancement of a juvenile defendant's *maximum* sentence for first-degree murder under MCL 750.316 and MCL 769.25. An enhanced maximum sentence imposed under this statute is not governed by the sentencing guidelines, but rather is part of a legislative response to the United States Supreme Court's holding in *Miller*. Indeed, this case is unlike any other sentencing case decided in Michigan in that MCL 769.25 is a sui generis exception to the rule in Michigan that, apart from habitual offender statutes, maximum sentences are fixed by law and cannot be increased based on judicially-found facts. See e.g. *People v McCullers*, 479 Mich 672, 694; 739 NW2d 563 (2007), overruled in part on other grounds, *Lockridge*, ___Mich___, (noting that, apart from habitual offender statutes, a criminal defendant's maximum sentence in Michigan is "prescribed by MCL 769.8, which requires a sentencing judge to impose no less than the prescribed statutory maximum sentence as the maximum sentence for every felony conviction" (quotation marks, citations, and footnote omitted)).

That this case does not involve scoring of sentencing guidelines to fix a mandatory minimum sentence, but rather involves the constitutionality of increasing a maximum sentence places it squarely within the familiar purview of *Apprendi*, *Ring*, *Blakely* and *Cunningham*. The analysis, therefore, is simple: apart from a prior conviction or a fact admitted by the defendant, any fact that exposes a defendant to an increased maximum sentence beyond that which is authorized by the jury verdict standing alone, must be submitted to a jury and proved beyond a reasonable doubt. Moreover, in the context of increasing a maximum sentence based on judicially-found facts, judicial discretion cannot substitute for a defendant's constitutional right to a jury. See e.g. *Alleyne*, 133 S Ct 2162 (observing that "if a judge were to find a fact that

-16-

increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range (i.e., the range applicable without that aggravating fact);" *Blakely*, 542 US at 305, 305 n 8 (noting that where a judge acquires authority to impose an enhanced sentence "only upon finding some additional fact," "[w]hether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence" and it is therefore constitutionally deficient).

The state argues that MCL 769.25 does not expose defendant to an increased penalty because "[a]t the time of conviction, [defendant] faced the potential penalty of life without possibility of parole," and the "maximum allowable punishment is—at both the point of conviction and at sentencing—life without the possibility of parole." Similarly, the Attorney General, as amicus curiae, argues that "[t]he statutory maximum penalty for first-degree murder—even for minors—is life without parole . . . No facts are needed to authorize the sentence, beyond those contained in the jury's verdict." However, if as the state and the Attorney General contend, the "maximum allowable punishment" is life without parole at the point of defendant's conviction, then that sentence would offend the constitution. Under *Miller*, a mandatory *default sentence* for juveniles *cannot* be life imprisonment without the possibility of parole. Such a sentence would not be an individualized sentence taking into account the factors enumerated in *Miller*. See e.g. Russell, 56 BC L Rev at 581 (explaining that under *Miller*, "[t]he default is not life without parole. It is only in the rare or unusual case-where a factual finding of irreparable corruption is made—that a juvenile may be exposed to life without parole"). This is why MCL 769.25 creates a default term-of-years sentence for juveniles convicted under MCL 750.316. That is, at the point of conviction, the maximum sentence that defendant faced, absent additional findings by the trial court, was a term-of-years sentence. Like in *Apprendi*, *Ring*, *Blakely* and *Cunningham*, here, defendant's maximum sentence could only be enhanced following findings made by a judge.

Furthermore, the Supreme Court rejected a similar argument in *Ring*, 536 US at 605-606. In that case, Arizona argued that its capital punishment was constitutional, in part, because Arizona's first-degree murder statute specified that "death or life imprisonment" were the only sentencing options. *Id*. at 603-604. Therefore, according to Arizona, when the sentencing judge sentenced the petitioner to death, he was "sentenced within the range of punishment authorized by the jury verdict." *Id*. at 604. The Supreme Court rejected this argument, explaining that "[t]he Arizona first-degree murder statute authorizes a maximum penalty of death only in a formal sense." *Id*. (quotation marks and citations omitted). Instead, the Supreme Court looked to the effect of the statute over its form, noting that, "[i]n effect, 'the required finding [of an aggravated circumstance] expose[d] [the petitioner] to a greater punishment than that authorized by the jury's guilty verdict." *Id*., quoting *Apprendi*, 530 US at 494. Similarly, in this case, MCL 750.316 authorizes a life without parole sentence for juveniles "only in a formal sense," and, in effect, the required findings mandated by MCL 769.25(6) subjected defendant to greater punishment than that authorized by the jury's guilty verdict.

The state and the Attorney General attempt to distinguish *Ring* from the present case by arguing that, unlike in *Ring*, which required the sentencing judge to find one of several specified aggravating factors, MCL 769.25 does not mandate the presence of any factor before authorizing

-17-

a life without parole sentence. This is a distinction without any real meaning that was rejected in *Blakely*, wherein the Court explained:

> [w]hether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact. [*Blakely*, 542 US at 305 (footnote omitted).]

As in *Blakely*, what is critical is that, the trial court in this case acquired authority to enhance defendant's sentence from a term-of-years to life without parole "only upon finding some additional fact." *Id.* In that respect, this case is not distinguishable from *Ring*, *Blakely* or any of the other United States Supreme Court decisions relative to defendant's Sixth Amendment rights discussed *supra*.

The Attorney General also argues that *Ring* is distinguishable because, unlike in *Ring*, in this case, the factors in MCL 769.25(6) do not enhance the sentence, but instead act as mitigating factors that can bring the sentence down to a term-of-years. The Attorney General reads the statute backwards. The term-of-years sentence is the default that can be enhanced based on judicial findings. Thus, under the statutory configuration, the *Miller* factors are used to seek enhancement of defendant's punishment.

Similarly, the Attorney General argues that neither MCL 769.25 nor *Miller* require "any fact to be found before a trial court imposes a sentence of life without parole," therefore, the life-without-parole sentence was available at the time of conviction. This argument ignores the plain language of the statute and misconstrues *Miller*. Specifically, MCL 769.25(6) provides that, upon the prosecution's motion, "the court *shall* conduct a hearing . . . as part of the sentencing process . . . [and] *shall consider the factors* listed in [*Miller*, 576 US at___]" (emphasis added). By their very nature, the factors enumerated in *Miller* necessitate factual findings. See e.g. *Gutierrez*, 58 Cal 4th at 1388 (explaining that "*Miller* discussed a range of factors relevant to a sentencer's determination of whether a particular defendant is a rare juvenile offender whose crime reflects irreparable corruption" (emphasis added)); Russell, 56 BC L Rev at 581 (noting that, "the consideration of mitigation and aggravation under *Miller* is part of making a particular factual determination: is the juvenile irreparably corrupt and incapable of rehabilitation?") Moreover, "*Miller* concludes that life without parole is an inappropriate sentence for most juveniles, and may be given only in rare circumstances where certain facts are established. Thus, the factual finding of 'irreparable corruption' aggravates—not mitigates—the penalty." Russell, 56 BC L Rev at 582.[12]

---

[12] Our dissenting colleague erroneously posits that we "latch[] onto a statement in a law review article" to support the proposition that "irreparable corruption" is an "aggravating factor." *Post* at 10. To the contrary, we do not hold that "irreparable corruption" is an "aggravating factor." Rather, the *Miller* Court held that life imprisonment without parole for juvenile homicide offenders is constitutionally permissible only in those rare cases where a juvenile's crime reflects

-18-

In addition, as noted, MCL 769.25(7) provides that, in imposing the sentence, "the court *shall specify* on the record *the aggravating and mitigating circumstances considered* by the court and the court's reasons supporting the sentence imposed" (emphasis added). Thus, the language of the statute necessarily requires the trial court to make findings of fact before imposing a life without parole sentence.[13]

In a similar argument, the dissent posits that *Miller* "hardly establishes a list of factors which must be met before a sentence of life without parole may be imposed," and states that *Miller* does not "set[] forth any particular facts that must be found before a sentence of life without parole may be imposed." *Post* at 8-9. Instead, according to the dissent, *Miller* "merely require[s] the sentencing court to take into account the individual circumstances of the juvenile offender before determining whether a sentence of life without parole is appropriate in each particular case." *Id*. at 9. The dissent concludes that because a sentencing court need only "consider" the *Miller* factors as opposed to make findings on the factors, MCL 769.25 does not violate *Apprendi* and its progeny. *Id*. at 9-10. Conveniently, the dissent fails to articulate how a judge should take into account, without making any findings of fact, a juvenile's immaturity, impetuosity, his or her failure to appreciate risks and consequences, his or her family and home environment, whether the home environment is "brutal or dysfunctional," whether the juvenile

_____

"irreparable corruption." *Miller*, 132 S Ct at 2469. The factors provided by the *Miller* Court serve as a guidepost during the sentencing phase to determine if the juvenile's offense reflects irreparable corruption. Absent this determination, life imprisonment without parole violates the Eighth Amendment. Moreover, this is not a maxim derived from a law review article. See e.g. *People v Gutierrez*, 58 Cal 4th 1354, 1388; 171 Cal Rptr 3d 421; 324 P 3d 245 (2014), quoting *Miller*, 132 S Ct at 2469 (explaining that "*Miller* discussed a range of factors relevant to a sentencer's determination of whether a particular defendant is a 'rare juvenile offender whose crime reflects irreparable corruption.'")

[13] The dissent acknowledges that MCL 769.25(7) requires the sentencing court to "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." *Post* at 8. However, the dissent states, "[b]ut nowhere does the statue require the trial court to make any particular finding of fact before it is authorized to impose a sentence of life without parole." *Id*. The fallacy in this statement, of course, is that it fails to recognize that, in order to consider and specify an aggravating circumstance on the record, a trial court necessarily must first make findings as to the presence and relevance of the aggravating circumstance. Moreover, if the dissent were correct in its contention that MCL 769.25(6) did not require the sentencing court to make any findings of fact, then the statute would offend the Eighth Amendment because, as discussed in detail above, *Miller* requires an individualized factual inquiry before a juvenile may be sentenced to life without parole. Furthermore, the dissent's argument "overlooks *Apprendi's* instruction that the relevant inquiry is one not of form, but of effect." *Ring v Arizona*, 536 US 584, 604; 122 S Ct 2428; 153 L Ed 2d 556 (2002) (quotation marks and citations omitted). In effect, by directing the sentencing court to "consider" the *Miller* factors and specify the aggravating and mitigating circumstances on the record, the statute requires the sentencing judge to make findings of fact before imposing the harsher life without parole sentence.

-19-

could extricate herself from the home environment, the circumstances of the offense, the extent of the juvenile's participation in the offense conduct, whether familial and peer pressures may have affected the juvenile, whether the juvenile might have been charged and convicted of a lesser offense if not for youthful incompetence, whether the juvenile was able to deal with police officers or prosecutors, whether the juvenile was able to assist trial counsel, and, importantly, whether the juvenile exhibits potential for rehabilitation. See *Miller*, 132 S Ct at 2469. The dissent's contention that there exists a means by which all of these factors must be "considered" without leading to a single finding of fact defies logic.[14]

In an attempt to bolster its flawed analysis, the dissent focuses on the word "consider" in MCL 769.25(6): specifically, the statute provides that, "[a]t the hearing, the trial court shall *consider* the factors listed in [*Miller*]. . ." (emphasis added). *Post* at 9-10. The dissent contends that because the statute directs a court to "consider" the factors as opposed to make findings on the factors, the statute therefore does not require judicial fact finding to increase a juvenile homicide offender's maximum sentence to life without parole. *Id*. at 9-11. However, consideration of factors necessarily requires fact finding and the terms are often used interchangeably in the law. For example, in the context of child custody proceedings, MCL 722.23 sets forth best interest factors "to be *considered*, evaluated, and determined" by the trial court (emphasis added), and it is certainly well-settled law that this Legislative mandate requires a trial court to make factual findings on these factors. See e.g. *Bowers v Bowers*, 198 Mich App 320, 328, 497 NW2d 602 (1993) (noting that in a child custody case, "[t]he trial court must consider each of these [best interest] factors and explicitly state its *findings* and conclusions regarding each") (emphasis added). Similarly, in deciding whether to award alimony, "trial courts should *consider*. . ." several spousal support factors, *Berger v Berger*, 277 Mich App 700, 726-727; 747 NW2d 336 (2008) (emphasis added), and in considering those factors, trial courts should "*make specific factual findings* regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (emphasis added, quotation marks and citations omitted). Moreover, in the criminal context, "consideration" of factors implies fact finding. See e.g. *People v Cipriano*, 431 Mich 315, 335; 429 NW2d 781 (1988) (setting forth factors that a trial court "should *consider*" in determining whether a statement is voluntary) (emphasis added); *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010) (noting that a trial court's factual findings during a voluntariness inquiry are reviewed for clear error).

In short, the dissent's contention that consideration of factors is distinct from making findings as to those factors is a difference without any real meaning, illustrates the tenuous nature of the dissent's flawed analysis, and "ignore[s] reality and the actual text of the statute."

---

[14] In addition, the basic assertion of the dissent is that we reach our conclusions based on what the dissent labels "a false premise." *Post* at 1. Specifically, the dissent contends that our opinion states that "*Apprendi* and its progeny requires that *all* facts relating to a sentence must be found by a jury." *Id*. However the dissent fails to cite where that statement is made, we presume because our opinion does not so state, leading, of course, to the inescapable conclusion that it is the dissent whose argument is based entirely upon a false premise.

*Potter v McLeary*, 484 Mich 397, 438, 774 NW2d 1 (2009) (YOUNG, J., concurring in part and dissenting in part).

The state also argues that, unlike in *Cunningham*, 549 US at 270, where findings of certain aggravators required the sentencing judge to impose a heightened sentence, in this case, under MCL 769.25, the sentencing judge has discretion to impose the harsher sentence. However, merely because the sentencing judge has discretion to impose a harsher penalty does not save MCL 769.25 from constitutional delinquency because "[w]hether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence." *Blakely*, 542 US at 305 n 8. Indeed, in *Blakely*, the Court rejected Washington's attempt to distinguish *Apprendi* from that state's sentencing scheme on grounds that sentencing judges had discretion to impose an exceptional sentence. See *Cunningham*, 549 US at 283, citing *Blakely*, 542 US at 305. The *Blakely* Court explained that judicial discretion cannot serve as a substitute for the Sixth Amendment, explaining:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. *But the facts do not pertain to whether the defendant has a legal right to a lesser sentence--and that makes all the difference* insofar as judicial impingement upon the traditional role of the jury is concerned. [*Blakely*, 542 US at 308-309 (internal citations omitted) (emphasis added).]

In this case, based solely on the facts that were submitted to the jury, defendant was entitled to a term-of-years sentence. Therefore, because the factual findings required by *Miller* and MCL 769.25(6) were not part and parcel to the elements submitted to the jury, these facts "pertain to whether the defendant has a legal right to a lesser sentence . . . ]," and merely because the sentencing court has discretion to impose the harsher sentence cannot serve as a substitute for defendant's Sixth Amendment right to a jury. *Id*.

Finally, in an argument that can best be described as a Herculean attempt at linguistic gymnastics, the Attorney General argues that the default term-of-years sentence mandated by MCL 769.25(9) is not actually the default sentence because "[i]f . . . the prosecutor moves for a life sentence, then the term of years is not the default." This argument misconstrues the meaning of the word "default." "Default" is defined in relevant part as, "a selection made automatically or without active consideration due to lack of a viable alternative." *Merriam Webster's Collegiate Dictionary*, (11th ed.) Under MCL 769.25, a term-of-years sentence is automatic and there is no alternative absent the prosecution's motion for a life without parole sentence and

additional findings by the court. Accordingly and as specifically stated in *Carp*, 496 Mich at 458, a term-of-years is the default sentence.[15]

To summarize, the default sentence for a juvenile convicted of first-degree murder under MCL 750.316 is a term-of-years prison sentence. MCL 769.25 authorizes a trial court to enhance that sentence to life without parole based on factual findings that were not made by a jury but rather were found by a judge. In this respect, the statute offends the Sixth Amendment as articulated in *Apprendi* and its progeny. In order to enhance a juvenile's default sentence to life without parole, absent a waiver,[16] a jury must make findings on the *Miller* factors as codified at MCL 769.25(6) to determine whether the juvenile's crime reflects "irreparable corruption" beyond a reasonable doubt. Accordingly, because defendant's sentence for first-degree murder was imposed in a manner that violated the Sixth Amendment, she is entitled to resentencing on that offense.[17]

### B. SEVERABILITY AND SENTENCING OF JUVENILES GOING FORWARD

Although portions of MCL 769.25 are unconstitutional, this does not necessarily render the statute void in its entirety. Rather, MCL 8.5 provides:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

Indeed, "[i]t is the law of this State that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance be permitted to stand." *Eastwood Park Amusement Co v East Detroit Mayor*, 325 Mich 60, 72; 38 NW2d 77 (1949).

---

[15] Moreover, as explained above, life without parole can never be the default sentence for juveniles under *Graham* and *Miller*.

[16] See *Blakely*, 542 US at 310 (noting that "nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding.")

[17] Given our resolution of this issue, we need not address the other issues defendant raises on appeal. We note that we reject defendant's argument that she should be resentenced in front of a different judge on remand. Although resentencing before a different judge may be "warranted by the circumstances" on some occasions, here, defendant has not articulated any circumstances that warrant resentencing before a different judge. *People v Coles*, 417 Mich 523, 536; 339 NW2d 440 (1983), overruled in part on other grounds, *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

In this case, apart from subsection (6)'s provision directing the trial court to consider the *Miller* factors, and from subsection (7)'s provision directing the court to articulate aggravating and mitigating circumstances on the record, MCL 769.25 remains operable in the event that the findings on the *Miller* factors are made by a jury beyond a reasonable doubt.[18] That is, following a conviction of first-degree murder and a motion by the prosecuting attorney for a life without parole sentence, absent defendant's waiver, the court should impanel a jury[19] and hold a sentencing hearing where the prosecution is tasked with proving that the factors in *Miller* support that the juvenile's offense reflects "irreparable corruption" beyond a reasonable doubt. During this hearing, both sides must be afforded the opportunity to present relevant evidence and each victim must be afforded the opportunity to offer testimony in accord with MCL 769.25(8). Following the close of proofs, the trial court should instruct the jury that it must consider, whether in light of the factors set forth in *Miller* and any other relevant evidence, the defendant's offense reflects irreparable corruption beyond a reasonable doubt sufficient to impose a sentence of life without parole. Alternatively, if the jury decides this question in the negative, then the court should use its discretion to sentence the juvenile to a term-of-years in accord with MCL 769.25(9).

## V. CONCLUSIONS

The Sixth Amendment requires that, other than a prior conviction, any fact that increases either the floor or the ceiling of a of a criminal defendant's sentence beyond that which "a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by defendant," must be submitted to a jury and proved beyond a reasonable doubt. *Blakely*, 542 US at 296. The default sentence for juveniles convicted of first-degree murder—i.e. the sentence authorized by the jury verdict—is a term-of-years prison sentence. MCL 769.25 authorizes a trial court to increase that sentence to life without the possibility of parole contingent on the trial court's findings with respect to the *Miller* factors and any other relevant criteria. Because MCL 769.25 makes an increase in a juvenile defendant's sentence contingent on factual findings, those findings must be made by a jury beyond a reasonable doubt. Accordingly, in this case, because defendant was denied her right to have a jury make the requisite findings under MCL 769.25, she is entitled to resentencing on her first-degree murder conviction.

---

[18] The Sixth Amendment does not require the jury to articulate mitigating and aggravating circumstances, thus subsection (7) is inoperable.

[19] We note that this hearing may be conducted before the jury that determined the defendant's guilt in the event that the prosecution moves to impose a life without parole sentence after the jury verdict, but before the jury is dismissed. See e.g. 18 USC § 3539(b) (providing that the sentencing hearing in a federal death penalty case may be conducted before the jury that determined the defendant's guilt, or, in certain circumstances, before a jury impaneled "for the purpose of" the sentencing hearing). Alternatively, the court may impanel a new jury for the purposes of the sentencing hearing in accord with the court rules governing impaneling a jury for the guilt phase of the proceeding. See MCR 6.410; MCR 6.412.

Vacated and remanded for resentencing consistent with this opinion. Jurisdiction is not retained.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra