# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALVIN PERRY JORDAN,

Defendant-Appellant.

UNPUBLISHED
March 7, 2017

No. 328474
Wayne Circuit Court
LC No. 15-000968-01-FC

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant, Alvin Perry Jordan, of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to life imprisonment without the possibility of parole for each murder conviction, and to 15 years to life imprisonment for the robbery conviction, those sentences to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand for resentencing on his armed robbery conviction, and for correction of the judgment of sentence to specify one conviction for first-degree murder, supported by two different theories.

Defendant's convictions arise from the December 29, 2014 shooting death of Will Wright, who was shot and killed during a robbery after a drug sale. Testimony at trial indicated that Wright went to an apartment building to sell narcotic pills to Tanzania Corbin, the mother of defendant's girlfriend. After the sale, as Wright was exiting the building, he was approached by defendant. According to a witness, Lee Butler, the two men struggled over a gun. Defendant prevailed and Wright attempted to run away, but defendant shot him in the back. Defendant thereafter went through Wright's pockets and then left.

Both Corbin and Wright's friend, Nathan Lemons, who had accompanied Wright to the apartment building, denied that Wright was armed with a gun. Corbin also denied seeing defendant with a gun on the date of the offense, but admitted seeing him with a gun the day

---

[1] The jury acquitted defendant of an additional count of felonious assault.

before. According to Corbin, after she heard two gunshots outside her apartment, defendant returned to her apartment and told her that he had shot Wright. Defendant removed his jacket, placed it in a closet, and then left. Shortly thereafter, the police arrived and seized a hooded sweatshirt during a search of Corbin's apartment. The sweatshirt contained blood, and DNA testing confirmed that the blood matched Wright's DNA. Defendant was also identified as a "possible contributor" to DNA taken from blood found under fingernail clippings from Wright's left hand.

## I. SELF-DEFENSE

On appeal, we first address defendant's argument that defense counsel was ineffective for failing to request a jury instruction on self-defense, despite alluding to such a theory during his closing argument. Because defendant did not raise an ineffective assistance of counsel claim in a motion for a new trial or request an evidentiary hearing, our review of this issue is limited to errors apparent from the record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). To establish a claim of ineffective assistance of counsel, defendant must show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court presumes that defense counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Vaughn*, 491 Mich at 670. Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Because defendant bears the burden of demonstrating both deficient performance and prejudice, he necessarily bears the burden of establishing the factual predicate for his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Whether to request a particular jury instruction can be a matter of trial strategy, and counsel is given wide discretion with regard to matters of strategy. *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003); *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Although defense counsel discussed Butler's testimony that he saw two men wrestling over a gun, counsel used this testimony, not to argue self-defense, but to argue that defendant could not be guilty of premeditated or felony-murder, and, at most, was guilty only of second-degree murder due to the lack of time to premeditate. Counsel also argued that the prosecution had not shown that defendant took anything from Wright. Counsel further argued that someone else, perhaps a bystander, could have taken the gun after the shooting.

We cannot conclude that counsel's decision to pursue this line of strategy, and to not request a self-defense instruction, was objectively unreasonable, particularly considering the lack of evidence supporting a legally viable claim of self-defense. A person is entitled to use deadly force in self-defense if the person honestly and reasonably believes "that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force[.]"

-2-

*People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). A person who acts as the initial aggressor cannot be found to have acted in justifiable self-defense. *People v Guajardo*, 300 Mich App 26, 35-36, 43; 832 NW2d 409 (2013). Apart from Butler's testimony describing an actual struggle for the weapon, very little other evidence supported a finding that defendant acted in self-defense. Indeed, the great body of evidence directly refuted such a theory. Although Butler described a struggle over the gun, he also stated that the gun was never in Wright's hands while the two men were wrestling. Moreover, Butler testified that after defendant prevailed in the struggle, Wright was trying to run away when defendant shot him. The physical evidence confirmed that Wright was shot in the back from a distance of more than two feet, at an angle consistent with someone bent over trying to run away. Lemons stated that Wright was unarmed, and Corbin similarly stated that she had never seen Wright with a gun. Lemons also testified that it was defendant who approached Wright as Wright was exiting the apartment building after the drug sale. No evidence indicated that Wright approached or attacked defendant, or acted as an initial aggressor in the confrontation with defendant. Defendant did not testify about his own version of the shooting, or offer any witnesses who were supportive of a self-defense claim.

Given this evidence, counsel's strategy to attack the element of premeditation and to argue the lack of evidence of an underlying felony to support the felony-murder charge was not objectively unreasonable. Moreover, to the extent that the testimony describing a struggle over the gun could be deemed minimally sufficient to support a self-defense instruction, considering the lack of other evidence supporting a self-defense claim, and the body of evidence refuting any legal claim of self-defense, it is not reasonably probable that the outcome of the trial would have been different if a self-defense instruction had been requested and given. Therefore, defendant was not prejudiced by counsel's failure to request the instruction.[2]

## II. DEFENDANT'S LIFE-WITHOUT-PAROLE SENTENCES

Defendant argues that his mandatory sentence of life imprisonment without the possibility of parole violates the constitutional prohibition on cruel and unusual punishment considering his age, 18 years, at the time of the offense. Because defendant did not challenge the constitutionality of his mandatory life sentence in the trial court, this issue is unpreserved. Accordingly, we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

As defendant observes, in *Miller v Alabama*, 567 US ___ ; 132 S Ct 2455, 2460; 183 L Ed 2d 407 (2012), the United States Supreme Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " The Court explained the

---

[2] We also reject any suggestion that defense counsel improperly conceded defendant's guilt of second-degree murder during counsel's closing argument. Initially, we note that counsel specifically stated that he was not making such a claim. Regardless, the decision whether to concede guilt on a lesser is a matter of trial strategy, which this Court will not second-guess. *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994).

rationale behind drawing a distinction between 18-year-old offenders and their younger counterparts, stating:

> To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys . . . . And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. [*Id.*, 132 S Ct at 2468.]

On appeal, defendant urges this Court to extend the holding in *Miller* to 18-year-old offenders. As discussed by this Court in *People v Skinner*, 312 Mich App 15, 23-27; 877 NW2d 482 (2015), the *Miller* decision represents a culmination of several decisions by the United States Supreme Court over the last 30 years that have gradually eased the automatic imposition of harsh sentencing for young offenders. As noted in *Skinner*, these decisions are based on the perceived differences between juvenile offenders and those who have reached the age of majority. *Id.* at 23-27. In contrast, defendant points only to a study noting that young adult brains share common risk-taking or impulse control features with those of juveniles. Defendant's study does support a position that, globally, mandatory life sentences for young offenders who have not reached full brain development is somehow unfair, or that the distinction between a 17-year-old and an 18-year-old is somehow "pure legal fiction." Any philosophical merit to defendant's position aside, defendant points to no legal authority to support his position. Accordingly, we decline defendant's invitation to extend *Miller* to 18-year-old offenders. The trial court did not violate the constitutional prohibition on cruel and unusual punishment by adhering to the demarcation between those who have attained the age of 18 years and those under 18 years of age, and by thereby imposing the mandatory sentence of life imprisonment without parole for defendant's conviction of first-degree murder.

We agree with defendant, however, that the trial court erred by entering a judgment of sentence reflecting two convictions and two life sentences for first-degree murder. Although the jury found defendant guilty of both first-degree premeditated murder and first-degree felony murder, because the two convictions arise from the death of a single victim, they violate the double jeopardy protection against multiple punishments for the same offense. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Accordingly, we remand for modification of the judgment of sentence to specify a single conviction of first-degree murder supported by two theories: premeditated murder and felony murder. *Id.*; *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998).

### III. DEFENDANT'S STANDARD 4 BRIEF

-4-

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

## A. ADMISSIBILITY OF EVIDENCE

Defendant challenges the admission at trial of (1) photographs of him that were obtained from his cell phone, and (2) the hooded sweatshirt recovered by the police during their search of Corbin's apartment. Defendant argues that each of these items should have been excluded as evidence because they were obtained through an illegal search. Defendant acknowledges that he never challenged the admissibility of this evidence in the trial court, leaving the issues unpreserved. Therefore, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. To constitute a "plain" error, the error must be "clear or obvious." *Id.* Defendant further argues, however, that defense counsel was ineffective for failing to seek suppression of this evidence. Because defendant did not raise an ineffective assistance of counsel claim in an appropriate motion in the trial court, review of that issue is limited to errors apparent from the record. *Snider*, 239 Mich App at 423.

"In general, searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se." *Lavigne v Forshee*, 307 Mich App 530, 537; 861 NW2d 635 (2014). Unless an exception applies, evidence that has been seized in violation of the constitutional prohibition against unreasonable searches and seizures must be excluded from trial. *Id.* at 537-538; *People v Chowdhury*, 285 Mich App 509, 516; 775 NW2d 845 (2009).

Defendant correctly asserts that a warrant is generally required before the police may lawfully search a suspect's phone. *Riley v California*, ___ US ___; 134 S Ct 2473, 2494-2495; 189 L Ed 2d 430 (2014); *People v Gingrich*, 307 Mich App 656, 665-666; 862 NW2d 432 (2014). Although defendant argues that the police unlawfully searched his phone, he points to no evidence addressing the circumstances under which the police obtained the photos or other data from his phone. The lower court record discloses that plaintiff filed a pretrial motion to admit photos obtained from defendant's cell phone. Plaintiff's brief in support of that motion specifically states that "[a] search warrant was executed on the contents of Defendant's cell phone that resulted in 692 images being recovered." Defendant never challenged the veracity of that statement, and he has presented nothing on appeal to indicate that this assertion is false or inaccurate, that the referenced warrant was somehow defective, or to establish any other irregularity. Because the record indicates that the cell phone photos were obtained pursuant to a search warrant, and defendant has not presented anything to suggest otherwise, we conclude that defendant has failed to demonstrate a plain error related to the seizure or admission of the cell phone photographs. Furthermore, absent any basis for concluding that the cell phone photos were illegally obtained, defendant's related ineffective assistance of counsel claim cannot succeed. Counsel is not required to raise a meritless issue. *People v Moorer*, 262 Mich App 64, 76, 683 NW2d 736 (2004).

Defendant also challenges the admission of the hooded sweatshirt that the police recovered during a search of Corbin's home shortly after the offense. "One established exception to the general warrant and probable cause requirements is a search conducted pursuant to consent." *People v Borchard–Ruhland*, 460 Mich 278, 294, 597 NW2d 1 (1999). "The

-5-

consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001) (quotation omitted). Defendant lacks standing to assert this issue. "The right to be free from unreasonable searches and seizures is personal, and the right cannot be invoked by a third party." *People v Mahdi*, ___ Mich App ___, ___; ___ NW2d ___ (2016); slip op at 5. Therefore, defense counsel's stipulation to the sweatshirt's admission was not ineffective assistance and we deny defendant's request for a remand on this issue.

## B.  JURY VERDICT FORM

Defendant next argues that the jury verdict form was defective because it did not allow the jury to choose a "general not guilty" option in which it could find defendant not guilty of all charges. Defendant acknowledges that there was no objection to the verdict form at trial. Thus, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. We find no merit to this issue.

Defendant correctly observes that "a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447, lv den 486 Mich 909 (2009). However, this is not what occurred here. The jury verdict form used at trial presented the jury with the following options for count 1, first-degree premeditated murder:



_____ NOT GUILTY

OR

_____ GUILTY OF HOMICIDE –MURDER FIRST DEGREE-PREMEDITATED

OR

_____ GUILTY OF THE LESS SERIOUS OFFENSE OF HOMICIDE- MURDER SECOND DEGREE  [Jury verdict form, p 1.]

Similar options, including a specific "not guilty" option, were provided for each of the other charged offenses. The verdict form clearly provided the jury with the option of finding defendant "not guilty" of each charged offense. Thus, there was no error, plain or otherwise. In addition, because defense counsel is not required to raise a meritless issue, *Moorer*, 262 Mich App at 76, counsel was not ineffective for failing to object to the verdict form.

## C.  ARMED ROBBERY SENTENCE

Defendant also argues, and we agree, that the trial court erred when it imposed a sentence of 15 years to life for defendant's armed robbery conviction. The trial court's sentence violates MCL 769.9(2), which provides that "[t]he court shall not impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence." A violation of MCL 769.9(2) renders a sentence wholly invalid and requires

resentencing de novo. *People v Parish*, 282 Mich App 106, 108; 761 NW2d 441 (2009). Accordingly, we vacate defendant's invalid sentence for armed robbery and remand for resentencing on that offense.

We affirm defendant's convictions, but vacate his sentence for armed robbery and remand for resentencing on that offense, and remand for correction of the judgment of sentence to specify a single conviction for first-degree murder, supported by two different theories. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause