# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KENYA ALI HYATT,

       Defendant-Appellant.

UNPUBLISHED
December 4, 2018

No. 325741
Genesee Circuit Court
LC No. 13-032654-FC

Before: CAVANAGH, P.J., and JANSEN and K. F. KELLY, JJ.

ON REMAND

PER CURIAM.

This matter returns to us following the Supreme Court's decision in *People v Skinner*, 502 Mich 89, 138; 917 NW2d 292 (2018), in which the Court held that "the decision to sentence a juvenile to life without parole is to be made by a judge and that decision is to be reviewed under the traditional abuse-of discretion standard." We now affirm Hyatt's life sentence.

Our previous opinion set forth the relevant facts:

On August 14, 2010, the victim, a security guard at River Village Apartments in Flint, was killed after being shot multiple times. [Floyd Gene] Perkins, [Aaron] Williams and Hyatt each gave statements to police officer Terence Green, and each implicated himself in the murder. The statements revealed that Perkins and his family were in danger because of a dispute Perkins had with an individual. Perkins wanted to obtain a firearm to help him protect his family. Williams and Hyatt were Perkins' cousins, but were not related to one another. The three individuals devised a plan in which Perkins could obtain a gun. Williams lived in the apartment complex where the murder took place and knew that the security guards who worked there were armed. Williams borrowed a gun from an individual known as "Chief." The idea was that Perkins, Hyatt and Williams would use the borrowed gun to rob one of the security guards of his firearm. On the night of the shooting, Williams acted drunk and disorderly in the apartment complex's parking lot in order to lure the victim out of his security car. When the victim approached Williams, Perkins and Hyatt approached from behind. Perkins grabbed the victim and held him while Hyatt drew the gun he had

-1-

received from Williams. Both Perkins and Hyatt indicated that the victim reached for Hyatt's gun and the gun discharged. After that first shot, Perkins grabbed the victim's side-arm and ran away. Perkins heard additional shots as he was fleeing. Hyatt maintained that the first shot was accidental and that he subsequently "blacked out" and could not remember what happened afterwards. [*People v Perkins*, 314 Mich App 140, 145–146; 885 NW2d 900, 907, opinion vacated (Feb. 12, 2016), superseded in part sub nom *People v Hyatt*, 316 Mich App 368; 891 NW2d 549 (2016), aff'd in part, rev'd in part sub nom. *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018).]

Perkins, Williams, and Hyatt were tried jointly before separate juries and received various sentences. *Id*. at 143. For purposes of this appeal:

> A jury convicted [Hyatt] of first-degree felony murder, conspiracy to commit armed robbery, armed robbery, and felony-firearm. Because Hyatt was 17 years old when the offense occurred, the trial court held a *Miller*[1] hearing to determine Hyatt's sentence. It ultimately sentenced Hyatt to life without the possibility of parole for the murder conviction, 210 months to 40 years' imprisonment for each of the conspiracy to commit armed robbery and armed robbery convictions, and two years' imprisonment for the felony-firearm conviction. [*Perkins*, 314 Mich App at 144.]

On appeal to this Court, Hyatt had argued in part that "[i]n light of this Court's decision in *People v Skinner*, 312 Mich App 15; 877 NW2d 482 (2015), Hyatt must be resentenced so that a jury may determine whether he should receive life in prison without the possibility of parole." *Perkins*, 314 Mich App at 145. In our previous opinion, we reviewed Hyatt's sentence:

> At Hyatt's *Miller* hearing, Officer Terrence Green testified that, unlike the other defendants, Hyatt showed "no remorse, no concern" for what happened. Green acknowledged that the robbery was Perkins' idea and that the other defendants were older than Hyatt. Hyatt's school records revealed assaultive behavior and a threat to "put a cap" in a teacher, resulting in his suspension. A counselor had worried that Hyatt appeared to have no remorse or conscience.
>
> Psychologist Karen Noelle testified that Hyatt had a below average IQ. She testified that Hyatt was a "seriously disturbed young man" with "serious maladjustment" who was "impressionable, easily led, frustrated," depressed, and "caught in a morass of . . .conflict." Hyatt reported that his mother, who was a lesbian, preferred "her women and alcohol" over her children. In contrast,

---

[1] *Miller v Alabama*, 567 US 460; 132 S Ct 2455, 2457; 183 L Ed 2d 407 (2012). *Miller* held that mandatory life imprisonment without the possibility of parole for those under the age of 18 at the time they committed the sentencing offense violated the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution, US Const, Am VIII.

Hyatt's father was a "very solid role model" for Hyatt. But Hyatt's father had been shot by intruders and was paralyzed from the chest down. Hyatt believed his father blamed him for the incident and Hyatt also blamed himself. After his father went to a VA hospital in Texas, Hyatt lived with his mother and other family members, though he considered himself homeless.

Noelle believed Hyatt had the intellectual capacity to be rehabilitated. She was "not sure" whether Hyatt was capable of remorse before the incident occurred because he clearly failed to appreciate the consequences of his prior actions. Hyatt was immature and irresponsible. Noelle testified: "I don't know that he has no sense of remorse and no conscience at all . . .I do feel that he is not a sensitive, compassionate young man. I do feel that he's pretty disconnected from societal morals and mores. I think that's concerning, yes I do." Noelle testified that she could not predict whether Hyatt was going to change. It would "require extreme effort and dedication on his part." But she could not say that he was "irredeemable." " [I]f I were to predict in five years, it would not be possible."

The sentencing court took the *Miller* factors into consideration at sentencing and concluded "I don't think any factor that I've considered has anything to do with his age." Hyatt's criminal acts were not the result of "impetuosity or recklessness." After extensively reviewing the evidence before it, the sentencing court concluded that "[i]n considering all of that and the nature of the crime itself and the defendant's level of participation as the actual shooter in this case, the principle of proportionality requires this Court to sentence him to life in the State prison without parole. [*Perkins*, 314 Mich App at 178–179.]

We noted that "[w]ere it not for *Skinner,* we would affirm the sentencing court's decision to sentence Hyatt to life imprisonment without the possibility of parole. Instead, we are compelled to remand for sentencing consistent with *Skinner.*" [*Id.* (footnote omitted).] Because we are no longer constrained by this Court's decision in *Skinner*, we now affirm defendant's sentence.

At defendant's original sentencing, the trial court noted that *Miller* "requires punishment for crimes to be graduated and proportional to both the offender and the offense." The trial court considered *Miller's* discussion regarding the possibility that a juvenile's immaturity, underdeveloped sense of responsibility, and background might make him vulnerable to negative influences and outside pressure. Because juvenile characters are not as well formed as adults, the trial court acknowledged its responsibility to consider any mitigating factors. To that end, the trial court considered factors such as defendant's chronological age, character, record, background, mental and emotional development, along with the circumstances of the offense and the extent of defendant's participation. The trial court observed that while defendant had an unstable family background, he was over seventeen when the crime was committed. The trial court gave significant weight to the fact that the crime was "very well planned out" and not "an act of impetuosity or recklessness." Instead, the victim was shot four times and "defendant was the person who shot that gun." The trial court also relied on Dr. Clark's testimony. Ultimately the trial court – after reviewing the records, presentence report, testimony, nature of the crime, and defendant's level of participation as the actual shooter – concluded that defendant should be sentenced to life without parole. Again, had it not been for this Court's decision in *Skinner,* we

would have affirmed the trial court's original sentence based on the trial court's well-reasoned analysis.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly